IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>RENE E SUMMERS and<br>DAVID R SUMMERS<br>dba PRO SOURCE FINTNESS<br>PRODUCTS,<br><br>Debtors. | Chapter 7<br><br>Case No. 05-22402<br><br>**MEMORANDUM DECISION** |

## I. Preliminary Statement

This matter comes before the Court via Trustee's "Objections to Claimed Exemptions" and "Amended - Trustee's Objections to the Claimed Exemptions and Notice of Bar Date to Respond" filed December 27, 2005 (collectively "Objections"). The Trustee objected, <u>inter alia,</u> to the claimed homestead exemption for the property located at 4895 East Skinner Drive in Scottsdale, Arizona 85331 (the "Skinner Property"). After the matter was fully briefed by the parties, the Court conducted a hearing on March 15, 2006.[1] Unfortunately on March 14, 2006, the Debtors filed a Supplemental Memorandum in Support of Response. Because the Supplemental Response was filed a day prior to the hearing, the Court determined at the hearing that the Trustee should be accorded the right, and additional time, to file his Supplemental Reply. The Supplemental Reply was filed on March 23, 2006 at which time this matter was deemed under advisement.

In this Memorandum Decision, the Court has now set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the <u>Rules of Bankruptcy Procedure</u>. The

---

[1] The Debtors filed their Response to the Objections on January 16, 2006, and the Trustee filed his Reply on January 31, 2006.

issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2006).

## II. Factual Discussion

The facts in this matter are undisputed. By warranty deed dated May 16, 2001, and recorded on May 30, 2001, the Debtors purchased the real property located at 5758 East Ironwood Drive in Cave Creek, Arizona 85331 (the "Ironwood Property") for $483,580. On April 29, 2004, Debtor Rene E. Summers filed a complaint seeking dissolution of her marriage to Debtor David R. Summers. That divorce case remains pending. By warranty deed dated June 17, 2004, and recorded on June 23, 2004, the Debtors sold the Ironwood Property for $686,500. By special warranty deed dated June 21, 2004, and recorded on June 25, 2004, Debtor Rene E. Summers purchased the claimed homestead, the Skinner Property, for $318,000. On June 25, 2004, American Home Mortgage Acceptance, Inc. caused a $254,400 deed of trust to be recorded against the Skinner Property. The Debtors filed for bankruptcy protection on October 11, 2005.

Originally, there was a dispute concerning the amount of proceeds used from the sale of the Ironwood Property to purchase the Skinner Property. However, the Trustee has now stipulated that the Debtor transferred approximately $54,000 of equity from the Ironwood Property to the Skinner property.

## III. Issues

1. Is 11 U.S.C. §522(p) applicable to these Debtors?
2. How should the "safe harbor" provision of 11 U.S.C. §522(p)(2)(B) be applied to the facts of this case?

2

**IV. Discussion**

*1. Is 11 U.S.C. §522(p) applicable to these Debtors?*

Congress recently enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which substantially changed the Bankruptcy Code. Most of these changes became effective on October 17, 2005. However, certain provisions became effective upon the date of enactment, April 20, 2005, and would apply to cases filed on April 20, 2005 or thereafter. §522(p) is one of those provisions. The Debtors filed their petition on October 11, 2005. But for the unique issues presented in this case, normally §522(p) would be applicable to a debtor that filed his/her petition on October 11, 2005, yet had acquired an interest in property used as a residence or claimed as a homestead within the 1215-day period prior the filing. However, as a result of the interplay between applicable state law and the Bankruptcy Code, there is an issue of law as to whether §522 (p) is applicable to Arizona debtors.

Arizona has opted out of the Federal exemptions set forth in 11 U.S.C. §522. A.R.S. §33-1101 (West 2005). The Arizona exemption statute expressly provides for a homestead equity exemption of up to $150,000.00 in real property used as a debtor's primary residence. A.R.S. § 33-1101. In contrast, §522(p)(1) states in relevant part:

> (p)(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in--
>     (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>     . . . or
>     (D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

The Court, in the case of In re McNabb, 326 B.R. 785 (Bankr.D.Ariz. 2005), concluded that the federal homestead exemption of $125,000.00 only applied in states that had not "opted-out" of the federal exemptions, relying on the fact that Arizona debtors had no ability to elect, under § 522(b)(3)(A), the state or local law. Rather, the Arizona debtors were required to claim exemptions under Arizona or non-bankruptcy federal law. Since §522(p)(1) was clear

3

that the debtor must have a right of election, the McNabb Court determined that there was no need to look at the legislative history of BAPCPA. McNabb at 789. The McNabb Court concluded that the $125,000 cap was "imposed only 'as a result' of an election, so if there [were] no election there [would be] no cap." Id. §522(p) applied only to those debtors in those states that allowed debtors to elect between federal and state exemptions. Id. at 791. To the extent that the McNabb Court considered the legislative history, the Court dismissed it as of little help.

Many Courts have disagreed with the reasoning in McNabb. *See* In re Kaplan, 331 B.R. 483, 484 (Bankr. S.D. Fla. 2005); In re Virissimo, 332 B.R. 201, 205 (Bankr. D. Nev. 2005); In re Kane, 336 B.R. 477, 481 (Bankr. D. Nev. 2006); In re Landahl, 338 B.R. 920 (Bankr. M.D. Fla. 2006). In its analysis, the Virissimo Court stated that "the plain meaning of the Statute will be rebutted when a contrary legislative intent is clearly expressed." Id. at 206 (citing In re Kaplan, 331 B.R. at 485 which relied on United States v. Ron Pair Enter., Inc., 489 U.S. 235, 243 109 S.Ct 1026, 103 L.Ed. 2d 290 (1989)). Applying the plain language approach to §522(p)(1), the Virissimo Court concluded that any debtor had a right to an election under §522(b)(3)(A). Said election might "become ineffective if the debtor [chose] a federal exemption in an opt-out state, but the debtor, nonetheless [made] an 'election' within the meaning of the statute." 322 B.R. at 205. In opt-out states, it was the effect of the election which was limited. Id.

As an alternative rationale for holding that §522(p)(1) should apply in opt-out states, the Virissimo Court offered the ambiguity in the BAPCPA provision as a basis to review the legislative history. Id. The Court stated that under its reading, or even pursuant to the reasoning posited by the Court in McNabb, there was a "defect in the statute which [created] an ambiguity." Id. at 206. Once the ambiguity was found, a court should consider the legislative history. The Virissimo Court concluded it was clear that Congress intended §522(p)1) to apply to debtors in all states. Other courts have reached a similar result. *See* Kaplan at 487 (concluding that, "there is no doubt that Congress intended §522(p), "to apply

4

to all states."); In re Kane at 489 (stating that "it is obvious that Congress intended to close the mansion loophole in opt-in as well as opt-out states."); In re Landahl at 922 (finding Kaplan, Verissimo, and Kane compelling and following the authority set forth by those cases.)

This Court respectfully disagrees with McNabb. The Courts in the decisions of In re Kaplan, In re Virissimo, In re Kane, and In re Landahl have determined that although there may be an ambiguity in §522(p)(1), since the debtors in opt-out states have a very limited right of election, the Courts should adhere to the legislative intent which clearly reflects that Congress intended the cap of $125,000 to be applied to all debtors under the circumstances mentioned in the Section. Accordingly, this Court concludes that Arizona debtors are subject to the provisions of §522(p).

*2. How should the "safe harbor" provision of 11 U.S.C. §522(p)(2)(B) be applied to the facts of this case?*

In §522(p)(1) Congress has established a homestead exemption cap of $125,000 if a homestead is acquired within 1,215 days of the filing of a petition in bankruptcy. However, §522(p)(2)(B) provides an exemption to this Subsection or "safe harbor." §522(p)(2)(B) states:

> (B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

The decision of In re Blair, 334 B.R. 374, 377 (Bankr. N.D. Tex. 2005) has interpreted this Subsection to allow a "rollover by debtors of the equity in one home to another home located in the same state. A debtor is not subject to the homestead cap if he takes the proceeds of his first residence and reinvests them in a second residence even within the prescribed period of section 522(p)."

In this matter, both parties agree that the Debtors are eligible for the exception in §522(p)(2)(B). The Debtors purchased the Ironwood Property in May 2001, more than

5

1215 days prior to filing for bankruptcy. Importantly, the Ironwood Property is located in Arizona. In June 2004 Ms. Summers purchased the Skinner Property. Originally, there was a dispute concerning the amount of proceeds used from the sale of the Ironwood Property to purchase the Skinner Property. However, the Trustee has now stipulated that the Debtor transferred approximately $54,000 of equity from the Ironwood Property to the Skinner property.

The parties disagree on how to apply §522(p)(2)(B) to the facts of this case. The Debtors encourage the Court to rely on In re Wayrynen, 332 B.R. 479 (Bankr. S.D. Fla. 2005). Much like the current case, the facts in In re Wayrynen involved a debtor who had used equity from a homestead acquired outside the 1,215-day window to purchase a new homestead within the 1,215-day window. The Court stated:

> [§522(p)] is clear that the limitation contained therein applies to that portion of the value of a debtor's residence, acquired within 1215 days of the petition date, which exceeds $125,000. In addition, however, the extent of the limitation is determined only after deducting from the value of a debtor's current residence that portion of the property's value attributable to the debtor's ownership of a previous residence, provided that the previous residence is located within the same state as the current residence and was acquired in excess of 1215 days before the petition date.

Id. at 485.

Using the analysis of Wayrynen, the Debtors encourage the Court to adopt the following calculations:

> [Assuming] the fair market value of the property is $465,000.00, as the trustee contends, then gross equity in the property is $210,000.00. Deducting the rolled over equity of $54,000.00 reduces that equity to $156,000.00. Then, [the Court] must deduct selling expenses of approximately six-percent ($27,900.00) to reach the net equity to be allocated between the [D]ebtor and the [T]rustee. Net equity is therefore $128,100.00. Because the exemption cap of §522(p) applies in this case (the [Skinner Property] was purchased within 1,215 days of the petition date), the [D]ebtor may only exempt $125,000.00, leaving $3,100.00 as property of the Estate.

March 14, 2006 Supplemental Memorandum at p. 9. If this Court were to allow §522(p) to be interpreted in the manner suggested by the Debtors, it would effectively rewrite Arizona's

6

homestead exemption statutes. Florida has an unrestricted homestead exemption.[2] Conversely, Arizona's homestead exemption is capped at $150,000. Therefore, in any analysis by this Court, it is clear that a debtor shall not receive a homestead exemption in excess of the limitation of $150,000 imposed on all residents of Arizona. There is no language in the Wayrynen decision that suggests that a state-imposed homestead cap be ignored. They Wayrynen Court started its analysis by referring to the Congressional intention to eliminate the "mansion loophole;"[3] that is, to eliminate the windfall debtors would receive from generous homestead exemptions. The Wayrynen Court analyzed the new provisions of §522(p) in light of Florida's uncapped homestead exemption. It is unclear whether the Wayrynen Court would have decided the issue in the same manner if there were a capped homestead exemption. However, as to the facts of this case, §522(p) should not have the unintended effect of eviscerating the homestead exemption cap imposed by A.R.S. §33-1101.

Based upon the foregoing, the Debtors in this case are entitled, pursuant to §522(p)(1), to claim a $125,000 homestead exemption. Additionally, because the Debtors rolled over equity from their previous Arizona homestead purchased more than 1,215 days prior to the filing of their bankruptcy petition, they may claim the rolled-over equity subject to the $150,000 homestead cap of A.R.S. §33-1101.

The Court calculates the Debtors' homestead exemption as follows. The current homestead property has a value of $465,000, and the parties will incur selling costs of

---

[2] "Pursuant to Article X, Section 4, Florida Constitution, a debtor residing in the State of Florida may claim a homestead exemption of an unlimited value, subject to a size limitation of 160 acres if located outside of a municipality, or to the extent of one-half acre if located within a municipality." Wayrynen at 482 footnote 1.

[3] Id. at 483-84. The Wayrynen court states: "To exclude Florida residents from the limitations provided in § 522(p)(1) would be contrary to the intention of the Reform Act's drafters. Id. The Legislative History provides: "The Bill also restricts the so-called 'mansion loophole.' Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their 'mansion loophole' laws."
H.R. Rep. No. 109-31, pt. 1, at 15-16, U.S.Code Cong. & Admin.News 2005, pp. 88, 102 (2005)."

7

6 percent to sell the residence. ($465,000 x 6% = $27,900.)  If the selling costs are subtracted from the fair market value, the parties will have net proceeds of $437,100.  Any consensual or tax liens must then be subtracted from the net proceeds.  In this matter, the liens are in the aggregate amount of $254,400.  If we subtract the sum of $254,400 from the current net proceeds of $437,100, we then have proceeds in the amount of $182,700.  The Debtors are entitled to a homestead cap of $125,000 because they purchased the Skinner Property within 1,215 days of the petition date, and the sum of $25,000 from the sum of $54,000 in rolled-over equity from the sale of their prior residence.  In such a manner, the Debtors will not exceed the maximum Arizona homestead exemption of $150,000.  The Trustee is entitled to the balance of the net equity in the sum of $32,700 ($182,700 - $150,000 = $32,700).

## **V. Conclusion**

The Court concludes that the Debtors' homestead exemption is subject to the provisions of 11 U.S.C. §522(p).  Accordingly, pursuant to §522(p)(1), because the Debtors purchased their current homestead within 1,215 days of filing their bankruptcy petition, the $125,000 cap imposed by said Subsection does apply.  However, because the Debtors transferred approximately $54,000 of equity from an Arizona homestead purchased outside the 1,215 day window, the Debtors are entitled to claim an additional exemption in the homestead pursuant to the "safe harbor" provision of §522(p)(2)(B) subject to the $150,000 cap imposed by A.R.S. § 33-1101.  Therefore, the Debtors are entitled to claim the sum of $125,000 and an additional $25,000 exemption, for a total exemption not to exceed $150,000.  The Trustee is entitled to the sum of $32,700 based upon the fair market value of the Debtors' residence.

DATED this 31st day of May, 2006.

*Sarah Sharer Curley* (signature)

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge